BENJAMIN M. O'DONNELL (SBN 309119)
LAURIE A. TRAKTMAN (SBN 165588)
STEVEN M. REHAUT (SBN 121710)
**GILBERT & SACKMAN**
**A Law Corporation**
3699 Wilshire Boulevard, Suite 1200
Los Angeles, California 90010
Telephone: (323) 938-3000
Facsimile: (323) 937-3139
email: bodonnell@gslaw.org
email: lat@gslaw.org
email: smr@gslaw.org

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BOARD OF TRUSTEES OF SHEET METAL WORKERS' HEALTH PLAN OF SOUTHERN CALIFORNIA, ARIZONA AND NEVADA,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT EUBANKS,<br><br>Defendant. | Case No. 5:20-cv-01113<br><br>Hon.<br><br>**COMPLAINT TO RECOVER HEALTH BENEFIT OVERPAYMENTS, FOR FRAUD AND MISREPRESENTATION, AND FOR EQUITABLE RESTITUTION** |

Plaintiff Board of Trustees of the Sheet Metal Workers' Health Plan of Southern California, Arizona and Nevada ("Plaintiff" or the "Plan"), avers as follows:

**JURISDICTION**

1. Jurisdiction in this Court is based on the exclusive jurisdiction of the District Courts to hear civil actions brought by a fiduciary pursuant to Sections 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended

("ERISA"), 29 U.S.C. §§ 1132(a)(3), to redress violations or enforce the terms of ERISA or a multiemployer plan governed by Section 502(e) of ERISA, 29 U.S.C. § 1132(e). Such jurisdiction exists without respect to the amount in controversy or the citizenship of the parties, as provided in Section 502(f) of ERISA, 29 U.S.C. § 1132(f).

2. Jurisdiction over the common law claims is appropriate under the Court's supplemental jurisdiction because the common law claims are part of the same case or controversy as the ERISA claim. 28 USC § 1367(a).

3. Plaintiff brings this action as a fiduciary under Section 502(a)(3)(B)(ii) of ERISA, 29 U.S.C. § 1132(a)(3)(B)(ii), to enforce the terms of an ERISA plan.

4. Venue is proper in this District Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that this is the district in which the Plan is administered, the acts mentioned below took place, and, benefits are paid from a corporate co-trustee bank.

## PARTIES

### Plaintiff

5. The Plan is an "employee welfare benefit plan" and a "multiemployer plan" as defined in sections 3(1) and 3(37) of ERISA, 29 U.S.C. § 1002(1) and (37)(A).

6. The Plan was created and is maintained pursuant to an agreement and declaration of trust ("Trust Agreement") executed and maintained pursuant to collective bargaining agreements between various employer associations and individual contractors located in the Southern California, Arizona, and Nevada areas performing work in the sheet metal industry, an industry affecting commerce, and various local unions of the International Association of Sheet Metal Air, Rail and Transportation Workers ("SMART"). As described more fully below, the Plan is

funded by contributions from employers who are signatory to the collective bargaining agreements.

7. The Board of Trustees, a fiduciary, is the plaintiff, who sues on behalf of the Plan.

8. The Board of Trustees is charged with the duty to conserve the assets of the Plan to pay health and welfare benefits consistent with the written provisions of the Plan and underlying Trust Agreement.

9. The administrative offices of the Plan are located at 111 North Sepulveda Boulevard, Suite 210, Manhattan Beach, California.

### Defendant

10. Defendant SCOTT EUBANKS is an individual who resides in Fontana, California. Plaintiff is informed and believes, and upon that ground alleges, that EUBANKS wrongfully received health and welfare benefits and eligibility by representing to the Plans that he was disabled when he was not in fact disabled and was in fact working in his customary trade and in Non-Covered Sheet Metal Service under the terms of the Plan.

## FACTS

### The Plan's Terms

11. Under the terms of the Plan, at all relevant times, health and welfare benefits were available to participants who worked at least 110 hours each month for a Contributing Employer.

12. A Contributing Employer is an employer required to make contributions to the Plan by a collective bargaining agreement with a participating local union or applicable law.

13. If a participant who is eligible for Plan benefits becomes disabled, he or she may continue to receive health and welfare benefits for a maximum of 13 weeks in any twelve consecutive calendar months.

14. If a disabled participant exhausts his or her disability period, he or she may transition to "self-pay" coverage under which the participant pays a monthly premium and continues to receive health and welfare benefits from the Plan.

15. If a participant works in Non-Covered Sheet Metal Service, he or she thereby loses eligibility for health and welfare benefits from the Plan, including coverage and self-pay coverage during periods of disability, from the date he or she first worked in Non-Covered Sheet Metal Service.

16. Non-Covered Sheet Metal Service includes but is not limited to any sheet metal work in the geographical jurisdiction of the Plan or a related plan for an employer which is not party to a collective bargaining agreement that requires the employer to make contributions to the Plan or a related plan.

17. Non-Covered Sheet Metal Service includes but is not limited to self-employment in the sheet metal industry within the geographic jurisdiction of the Plan if that self-employment is not covered by a collective bargaining agreement that requires contributions to the Plan or a related plan.

18. Non-Covered Sheet Metal Service includes but is not limited to positions of management, ownership (including by a spouse), sales, estimating, or consulting positions for sheet metal employers or in the sheet metal industry.

19. The Plan's geographical jurisdiction includes all of Southern California, Arizona, and Nevada.

### The Board of Trustees' Discretion to Make Eligibility Determinations and the Plan's Exclusive Appeals Process

20. The Trust Agreement, and the applicable Summary Plan Description for Defendant's plan of benefits (collectively, "Plan Documents") grant the Board of Trustees sole and absolute discretion to interpret the provisions of the Plan and to make the necessary factual determinations regarding any individual's eligibility for benefits, amount of benefits, or any other issue regarding the Plan.

21. The Plan Documents require any dispute regarding eligibility, type, amount, or duration of benefits to be resolved by the Board of Trustees of the Plan.

22. The Plan Documents provide a two-level appeals process for claimants to challenge an eligibility determination.

23. An individual who wishes to contest an eligibility determination made by the Administrative Office must first appeal to the Eligibility Committee in writing.

24. An individual may submit additional evidence or argument in his appeal to the Eligibility Committee that had not been previously submitted to the Plan.

25. The Eligibility Committee is composed of members of the Board of Trustees of the Plan who are appointed by the Board.

26. When the Eligibility Committee determines a claim of eligibility, it issues a written explanation giving detailed reasons for any denial, specific reference to the Plan provisions on which the denial is based, a description of any additional material or information necessary for the claimant to perfect his or her claim and an explanation of why such material or information is necessary, and a description of the Plan's review procedures and applicable time limits.

27. If the Eligibility Committee denies a claim of eligibility, the individual may appeal the decision of the Eligibility Committee to the Appeals Committee.

28. Any appeal of an eligibility determination must be made in writing within 180 days of receiving the Eligibility Committee's decision.

29. The Appeals Committee is composed of members of the Board of Trustees who are appointed by the Board.

30. There is no overlap in membership between the Appeals Committee and the Eligibility Committee.

31. During an appeal, an individual claimant has the right to access and copy all documents, records, and other information in the Plan's possession that is relevant to his or her claim for benefits.

32. During an appeal, an individual claimant also has the right to submit additional documentation, to be present at the meeting of the Appeals Committee when the Appeals Committee decides the matter, and to send a representative to the Appeals Committee meeting. Additional evidence may be presented in person at the Appeals Committee meeting

33. The Appeals Committee's determination of the claim for benefits is final and binding on all parties.

34. The Plan Documents provide that this two-step appeal process is the sole and exclusive procedure by which an individual who is dissatisfied with an eligibility decision may contest the decision.

35. The Plan Documents require a claimant to exhaust the appeal procedure before availing himself of any procedure outside of the Plan.

36. An individual claimant must bring any lawsuit challenging a determination of benefits within one year of the Appeals Committee's decision.

37. The Plan Documents grant the Appeals Committee full discretionary authority to determine all questions of eligibility for benefits, including discretionary authority to make all factual determinations and to construe any terms of the Plan.

### Defendant's Actions

38. Defendant was a participant in the Plan prior to January 2015.

39. In or about February 2015, Defendant rendered himself ineligible for participation in the Plan by engaging in Non-Covered Sheet Metal Service, but Defendant concealed this fact from the Plan as described in detail below.

40. For the months of March 2015 through May 2015, Defendant requested and received health and welfare benefits coverage from the Plan during a period of asserted disability.

41. At the end of May 2015, Defendant's 13 weeks of health and welfare coverage during a period of disability were exhausted.

42. For the months of June 2015 through October 2017, Defendant requested and received self-pay health and welfare benefits coverage on account of disability, as described above in paragraph 14.

43. In order to obtain self-pay coverage, Defendant submitted to the Plan a signed Application for Disabled Self-Pay Coverage, dated May 4, 2015, certifying that Defendant was unemployed and unable to work on account of disability.

44. In order to maintain eligibility for self-pay coverage, Defendant was required to periodically certify to the Plan that he was still disabled.

45. On or about December 1, 2015, Defendant submitted to the Plan a signed Evidence of Disability form to the Plan representing that he was disabled and eligible for health and welfare benefits.

46. On or about May 25, 2016, Defendant submitted to the Plan a signed Evidence of Disability form to the Plan representing that he was disabled and eligible for health and welfare benefits

47. On or about November 8, 2016, Defendant submitted to the Plan a signed Evidence of Disability form to the Plan representing that he was disabled and eligible for health and welfare benefits.

48. Defendant was not, in fact, disabled at any of these times.

49. Defendant was healthy enough to continue to engage in sheet metal work and operated his own sheet metal business while obtaining self-pay health and welfare benefits from the Plan, as described further below.

50. The Application and the Evidence of Disability forms submitted by Defendant were misrepresentations of fact.

51. The Application and the Evidence of Disability forms submitted by Defendant were intentional misrepresentations.

52. The Plan provided health and welfare benefits to Defendant in reliance on Defendant's representations that he was disabled and not working in sheet metal for the months from March 2015 until October 2017.

53. The Plan's reliance on Defendant's signed Application and Evidence of Disability forms was reasonable.

54. Defendant intended for the Plan to rely on his signed Application and Evidence of Disability forms to provide him benefits.

55. On or about November 9, 2017, the Plan was informed that Defendant was not disabled.

56. On or about November 9, 2017, the Plan was informed that Defendant was working in Non-Covered Sheet Metal Service.

57. On November 13, 2017, the Plan sent Defendant a letter informing him that it had been advised that Defendant was, or had been, working in Non-Covered Sheet Metal Service.

58. The November 13 letter informed Defendant that any work in Non-Covered Sheet Metal Service disqualified him from health and welfare benefits, including his self-pay benefits.

59. The November 13 letter instructed Defendant that if he did not agree that he had worked in Non-Covered Sheet Metal Employment he should "state [his] position in writing and/or submit written evidence to support [his] position, to the Eligibility Committee of the Board of Trustees of the Pension and Health Plans" prior to December 13, 2017.

60. Defendant did not submit a written position or submit written evidence to the Eligibility Committee.

61. On January 10, 2018, the Eligibility Committee found that Defendant did not dispute that he had been working in Non-Covered Sheet Metal Service.

62. Defendant did not dispute that he had been working in Non-Covered Sheet Metal Service.

63. On January 10, 2018, the Eligibility Committee found that Defendant did not provide any evidence to refute the evidence against him.

64. Defendant did not provide any evidence to refute the evidence against him.

65. On January 10, 2018, the Eligibility Committee found that the Defendant had been operating his own business in the sheet metal industry since at least February 2015.

66. Defendant had been operating his own business in the sheet metal industry since at least February 2015.

67. On January 10, 2018, the Eligibility Committee found that Defendant's business in the sheet metal industry was not a contributing employer to the plan.

68. Defendant's business in the sheet metal industry was not a contributing employer to the plan.

69. On January 10, 2018, the Eligibility Committee found that Defendant's business in the sheet metal industry constituted Non-Covered Sheet Metal Service.

70. Defendant's business in the sheet metal industry constituted Non-Covered Sheet Metal Service.

71. On January 10, 2018, the Eligibility Committee found that Defendant had been working in Non-Covered Sheet Metal Service on an ongoing basis.

72. Defendant had been working in Non-Covered Sheet Metal Service on an ongoing basis.

73. On January 10, 2018, the Eligibility Committee found that Defendant misrepresented that he was disabled and unable to work in the Sheet Metal Industry starting in January 2015.

74. Defendant misrepresented that he was disabled and unable to work in the Sheet Metal Industry starting in January 2015.

75. On January 10, 2018, the Eligibility Committee found that Defendant's misrepresentations that he was disabled and unable to work in the Sheet Metal Industry, starting in January 2015, were intentional.

76. Defendant's misrepresentations that he was disabled and unable to work in the Sheet Metal Industry, starting in January 2015, were intentional.

77. On January 10, 2018, the Eligibility Committee found that during the period while Defendant misrepresented that he was disabled, he was in fact operating or planning to operate a business in the Sheet Metal Industry in his own name.

78. During the period while Defendant misrepresented that he was disabled, he was in fact operating or planning to operate a business in the Sheet Metal Industry in his own name.

79. On January 10, 2018, the Eligibility Committee found that Defendant's Non-Covered Sheet Metal work during the period while he misrepresented that he was disabled made him ineligible for Health Plan coverage including self-pay coverage.

80. Defendant's Non-Covered Sheet Metal work during the period while he misrepresented that he was disabled made him ineligible for Health Plan coverage including self-pay coverage.

81. On January 10, 2018, the Eligibility Committee found that, as a result of Defendant's misrepresentations of material facts, he wrongfully obtained coverage under the Health Plan, for the months from March 2015 through October 2017.

82. As a result of Defendant's misrepresentations of material facts, he wrongfully obtained coverage under the Health Plan for the months of March 2015 through October 2017.

83. On January 10, 2018, the Eligibility Committee found that the Plan paid a total of $35,165.36 on behalf of Defendant or his eligible dependents in premiums or benefits during the period when Defendant was ineligible for benefits.

84. The Plan paid a total of $35,165.36 on behalf of Defendant or his eligible dependents in premiums or benefits during the period when Defendant was ineligible for benefits.

85. On January 10, 2018, the Eligibility Committee found that Defendant remitted a total of $12,700.00 in self-payments to the Plan during the period when he was ineligible for benefits.

86. Defendant remitted a total of $12,700.00 in self-payments to the Plan during the period when he was ineligible for benefits.

87. On January 10, 2018, the Eligibility Committee determined to apply the Plan's penalty rules for work in Non-Covered Sheet Metal Service and to notify Defendant of his appeal rights and amnesty rules.

88. On January 10, 2018, the Eligibility Committee determined that the Plan would demand that Defendant reimburse it for the amount paid in benefits while he was ineligible, less the amount that Defendant paid to the Plan in self-payments.

89. On January 17, 2018, the Plan notified Defendant of the Eligibility Committee's decision by letter.

90. The Plan's January 17 letter explained that the Defendant had received health and welfare benefits improperly as a result of his representation that he was disabled.

91. The Plan's January 17 letter demanded repayment of the $22,465.36 that the Plan paid on Defendant's behalf as a result of Defendant's false assertion of disability.

92. The Plan's January 17 letter informed Defendant that he had the right to appeal the Eligibility Committee's determination to the Appeals Committee.

93. The Plan's January 17 letter informed Defendant that in order to assert his right to an appeal he must send a written request for appeal to the Administrative Office of the Plan within 180 days from his receipt of the letter.

94. The Plan's January 17 letter informed Defendant that he had the right to be represented by an attorney in his appeal.

95. The Plan's January 17 letter informed Defendant that he had the right to submit additional evidence to support his position on appeal.

96. The Plan's January 17 letter was sent by both certified mail, return receipt requested, and by regular mail. The letter sent by regular mail was not returned to the Plan as undeliverable. The letter sent by certified mail was signed for at Defendant's home address on or before January 22, 2018.

97. Defendant did not assert his right to an appeal in writing.

98. The Board of Trustees of the Plan, in compliance with its fiduciary duties, files this action to enforce the written terms of the Plan and recover improperly paid health and welfare benefits plus interest.

## FIRST CAUSE OF ACTION:
## AGAINST DEFENDANT FOR EQUITABLE RESTITUTION AND DISGORGEMENT UNDER ERISA § 502(a)(3)

99. Plaintiff repeats and reavers each and every averment contained in paragraphs 1 through 98 above as if set forth here in full.

100. When Defendant submitted the Application for Disabled Self-Pay Coverage form signed on May 4, 2015 to the plan, falsely claiming that he was disabled, he committed a fraud or wrongdoing.

101. When Defendant submitted the Evidence of Disability form signed on December 1, 2015 to the plan, falsely claiming that he was disabled, he committed a fraud or wrongdoing.

102. When Defendant submitted the Evidence of Disability form signed on May 25, 2016 to the plan, falsely claiming that he was disabled, he committed a fraud or wrongdoing.

103. When Defendant submitted the Evidence of Disability form signed on November 8, 2016 to the plan, falsely claiming that he was disabled, he committed a fraud or wrongdoing.

104. During the periods when Defendant represented to the Plan that he was disabled, he was in fact operating his own sheet metal business.

105. As a direct result of Defendant's fraud or wrongdoing, the Plan paid $35,165.36 on the Defendant's behalf.

106. By virtue of the foregoing, and under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), the Plan is entitled to equitable restitution from Defendant for an amount of not less than $22,465.36 ($35,165.36 less the $12,700 paid by Defendant to the Plan) plus interest, according to proof at trial.

107. Under ERISA Section 502(g)(1), 29 U.S.C. § 1132(g)(1), the Plan is entitled to recovery of reasonable attorney's fees and costs incurred in connection with this action.

## SECOND CAUSE OF ACTION:
## AGAINST DEFENDANT FOR FRAUD AND MISREPRESENTATION
## [COMMON LAW]

108. Plaintiff repeats and reavers each and every averment contained in paragraphs 1 through 107 above as if they were repeated here in full.

109. Defendant was not disabled during the period from February 2015 through October 2017.

110. Defendant knew that he was not disabled.

111. Defendant was working in Non-Covered Sheet Metal Service during that period.

112. Because Defendant was working in Non-Covered Sheet Metal Service during that period, he was not eligible for benefits from the Plan, including disabled self-pay benefits.

113. Defendant signed and submitted at least 3 "Evidence of Disability" forms to the Plan representing that he was disabled.

114. Defendant signed and submitted an "Application for Disabled Self-Pay Coverage" form to the Plan representing that he was disabled.

115. Defendant knew that his representations of disability would cause the Plan to provide health benefits to him.

116. Defendant intended for the Plan to rely on his representations of disability to provide health benefits to him.

117. The Plan reasonably relied on Defendant's representation of disability to provide health benefits to him.

118. As a direct, legal, and proximate result of Defendant's deceit, the Plan has been damaged in an amount that is no less than $22,465.36, exclusive of interest, costs and attorney's fees, all of which the Plan is entitled to recover.

## THIRD CAUSE OF ACTION:
## AGAINST DEFENDANT FOR RESTITUTION
## [COMMON LAW]

119. Plaintiff repeats and reavers each and every averment contained in paragraphs 1 through 118 above as if they were repeated here in full.

120. Defendant knowingly benefitted at the expense of the Plan and has wrongfully gained an amount of not less than $22,465.36 plus interest, according to proof at trial.

121. Because Defendant knew that his misrepresentations would cause the Plan to mistakenly believe he was disabled, and because he benefitted from that misrepresentation, he was unjustly enriched in the amount of not less than $22,465.36.

122. To permit Defendant to retain these proceeds, interest, and profits would be to sanction fraud, inequitable, and wrongful conduct. The Plan should therefore have judgment against Defendant in the amount by which Defendant has been unjustly enriched, which amount is not less than $22,465.36, plus interest, according to proof at trial.

**PLAINTIFFS THEREFORE PRAY FOR JUDGMENT AGAINST DEFENDANT AS FOLLOWS:**

<u>As to all causes of action</u>:

(1) For money damages in the amount of $22,465.36, plus interest, or, in the alternative, for restitution, disgorgement, and accounting of the health benefits improperly paid to and retained by Defendant SCOTT EUBANKS, in the amount of $22,465.36 plus interest; and any profit realized by Mr. EUBANKS;

<u>As to cause of action 1 only</u>:

(2) For reasonable attorney's fees and costs incurred by the Plan to recover the health benefit overpayments;

(3) For all other allowable interest as provided by law, including prejudgment interest; and

<u>As to all causes of action</u>:

(4) For such further or other relief as the court may deem proper, including but not limited to, a constructive trust and/or equitable lien over the appropriated funds.

Dated: May 29, 2020                Respectfully submitted,

**GILBERT & SACKMAN**
A Law Corporation


By:   /s/ Benjamin M. O'Donnell
         Benjamin M. O'Donnell

*Attorneys for Plaintiff*